## H. J. MURPHY v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY.[1]

December 11, 1936.

No. 31,056.

[1]Reported in 270 N. W. 136.

460

*Canfield & Michael,* for appellant.

*J. A. Cashel,* for respondent.

DEVANEY, CHIEF JUSTICE.

Action to recover sum alleged to be due as balance of commissions for finding purchasers for certain real estate owned by defendant.

In the latter part of September, 1929, plaintiff, H. J. Murphy, banker in Wilmont, Minnesota, received from Annis & Rohling Company, of Council Bluffs, Iowa, farm loan bankers, a circular letter listing for sale two farms located near Wilmont. Both of these farms were owned by the defendant, John Hancock Mutual Life Insurance Company. About that time plaintiff talked with Rohling, agent of the defendant, over the telephone and was promised $600 commission if he found a buyer for one of these farms known as the Wermerskirchen farm, one-half to be paid on March 1, 1930, and the other half to be paid March 1, 1931. In the latter part of October, 1929, plaintiff had a similar conversation with Rohling concerning the other farm known as the Rath farm, and an agreement for $600 commission to be paid in the same manner on the same dates was made as to this farm also.

A contract for the sale of the Wermerskirchen farm was prepared at once, signed by the purchaser, and then submitted to Annis & Rohling Company, which in turn on September 28, 1929, mailed it to the defendant company, together with a letter stating:

"The commission of $600 is to be paid as follows: $300 March 1st, 1930, upon receipt of $2,000 down payment, and $300 March 1st, 1931, upon receipt of payment and interest then due, plus taxes."

The defendant company wired its acceptance to Annis & Rohling Company as follows:

"Committee Accepted Sale Proposition Outlined Yours Twenty Eighth Ultimo Wermerskirchen."

Rohling immediately wrote to plaintiff of this acceptance, stating:

"We submitted the Crowley contract to John Hancock Mutual on basis of our telephone conversation, and asked reply by wire so Mr. Crowley could start fall plowing. We are today in receipt of a wire as follows:

"'Committee accepted sale proposition outlined yours twenty eighth ultimo Wermerskirchen.'

"In our letter of the 28th ult., we recommended payment of $600 commission on this sale, as follows:—$300 March 1st, 1930, upon receipt of the $2,000.00 down payment; $300 March 1st, 1931, upon payment by purchaser of all sums then due the company, plus current taxes. If you wish, we will be glad to procure a letter direct from the John Hancock Mutual relative to this commission, for your files."

Plaintiff received this letter but made no response thereto.

On October 4, 1929, defendant company mailed to Annis & Rohling two of the duplicate contracts for delivery and stated:

"The $600 commission fee is to be paid on the basis outlined in your letter of the 28th ultimo."

With reference to the Rath farm, a contract was signed by the proposed purchaser and then sent to the defendant company for acceptance. The contract was returned on November 22, 1929, and on that date sent to plaintiff by Rohling with a letter which stated:

"In accordance with our understanding, you are to receive $600 commission on this sale and $600 commission on sale of Wermerskirchen farm to Crowley in annual installments, subject to John Hancock Mutual coming out whole on the Wermerskirchen place. In order to accomplish this happy result, you will recall that $750 will have to be received from the Wermerskirchen corn and pasture rent, in addition to the small grain money already remitted."

Plaintiff also received this letter but made no reply to this one either.

By the terms of both contracts $1,800 was due the defendant company on March 1, 1930. That amount was paid into plaintiff's bank on or about March 1, 1930. On March 13 plaintiff gave to Rohling a draft for $1,200, retaining $600 as commission.

By March 1, 1931, both contracts were in default, and they were later canceled. Plaintiff commenced this suit to recover the balance of the commissions. The case was tried to the court without a jury, and the court found for plaintiff. Defendant's motion to amend and substitute findings or for a new trial was denied, and judgment was entered. This appeal is from the judgment.

But one question need be considered: Were the remaining commission payments to plaintiff of $300 on each contract conditional or unconditional?

We believe it is clear from the evidence that, while Annis & Rohling Company were agents of the defendant company, each contract had to be submitted to the defendant for its approval and acceptance before it became legally binding. The manner of conducting negotiations as to the contracts involved herein and the complete lack of evidence indicating any authority on the part of Annis & Rohling Company to complete arrangements without final approval of defendant company permits of no other conclusion than that Annis & Rohling Company could make no agreement binding upon defendant which defendant did not approve in every detail. If that was true of the actual agreements between the defendant company and the proposed purchasers of the real estate, it must necessarily have been true of all agreements to pay commissions for the finding of such purchasers. There is no sound basis for separating the agreement to pay commissions from the actual contracts for the sale of the real estate so far as the authority of defendant's agents is concerned. There is no evidence whatsoever in this case showing that said agents had authority to make binding agreements either for the actual sale of the property or for the payment of commissions arising out of such sales.

In submitting the proposed contract for the Wermerskirchen farm on September 28, 1929, Annis & Rohling Company informed defendant in a letter hereinbefore quoted that a commission of $600 was to be paid, $300 on receipt of $2,000 down payment and $300 on receipt of payment of March 1, 1931. This was the proposition, and the only proposition, accepted by defendant; therefore it can be the only agreement binding on defendant as to the commissions to be paid to plaintiff. That plaintiff was well aware of the terms of this agreement is shown by the letter sent to him on October 2, 1929 (also quoted herein) by Rohling wherein the conditions of payment of the commissions are clearly set forth. No further comment is necessary. Defendant company paid the first $300 when the down payment was made as per agreement. The payment due under the contract on March 1, 1931, was not made by the purchaser of the Wermerskirchen farm; so by the terms of the agreement as to the commissions defendant never became obligated to pay the remaining $300 to plaintiff.

With reference to the contract of the sale of the Rath farm, the record does not reveal the exact terms of the proposition agreed to by the defendant as to the commissions to be paid to plaintiff. In our opinion, however, the conclusion is inescapable that the agreement made by the plaintiff and Annis & Rohling Company conditioned the payment of remaining commissions upon defendant company's "coming out whole" on the Wermerskirchen contract. This was the statement made in the letter of November 22, 1929, written by Rohling to plaintiff. Plaintiff received and kept this letter, making no objection thereto.

It appears that Rohling and plaintiff prior to the time this letter was written had made an oral agreement as to the commissions to be paid. The letter of November 22 was the first writing between the parties in confirmation of their agreement. We believe that plaintiff's failure to object to the terms contained in this letter constituted acquiescence and assent to Rohling's version of the agreement between them and that the terms contained in the letter were integrated into the contract in its completed form. The rule we follow is clearly illustrated in Restatement, Contracts, § 228:

"A & B make an oral contract by which A agrees to employ B on certain terms of employment. Immediately thereafter B writes A a letter beginning, 'Confirming our oral arrangement this morning.' B then proceeds to state the contract as he understands it. He does not, however, state it in all respects accurately. A makes no reply to the letter. A, thereafter, allows B to enter upon the agreed employment. There is an integration. A's acquiescence and B's version of the contract by acceptance of services is a manifestation of assent to the writing as a final and complete expression thereof."

In view of the fact that no agreement for commissions under the Rath contract was made by plaintiff directly with defendant company, it is obvious that plaintiff's rights necessarily are limited by the agreement between Annis & Rohling and himself.

Plaintiff's right to further commissions was clearly conditioned upon defendant's "coming out whole" on the Wermerskirchen contract. It is beyond dispute that this condition was not fulfilled. Conditions having existed, it was incumbent to show that the conditions were actually met before plaintiff was entitled to recover. Appleby v. Dysinger, 137 Minn. 382, 163 N. W. 739. This he has failed to do.

We conclude that the trial court erred in finding that there was owing to plaintiff a balance of $600 as commissions for procuring the two sales of defendant's real estate.

The judgment is reversed.