Joseph P. Suluvah, J.
Plaintiff, a real estate broker, duly licensed in the State of New Jersey, sues the prospective purchasers of a one-family residence to. recover the commissions which he contends he would have earned but for said purchasers’ refusal, without justification, to complete the transaction after a seller had been found ready, willing and able to convey on the terms sought by the purchasers.
*307 All of the operative events took place in New Jersey where the property is located. Defendants, a husband and wife, are residents of New York. Insofar as this court can determine, and neither party contends to the contrary, the law in New Jersey applicable to this controversy is the same as that of New York.
The underlying facts are relatively uncomplicated. Defendants requested plaintiff to show them one-family homes in a price range of $30,000 in and around the Teaneck, New Jersey, area. After defendants indicated an interest in the property in question, an agreement — designated “offer and acceptance ” and described by plaintiff in his testimony as the contract of sale, but in reality a binder, and pleaded as such —was signed by the sellers and by defendants, as purchasers. This document, prepared by plaintiff on his own letterhead and designating plaintiff as the agent of the sellers, contained the barest and yet most essential terms of a contract of sale. It identified the parties and the property and stated the price and terms of financing.
The binder, while acknowledging the purchasers’ payment of $100 as a deposit, required the purchasers, three days after the execution thereof, to pay on account the additional sum of $3,100 towards the purchase price. These two payments, totaling $3,200, represented 10% of the purchase price. Defendants never paid the additional sum of $3,100 and neither party proceeded any further in the transaction, with plaintiff now contending that it was defendants’ default in paying the $3,100, in accordance with the terms of the binder, which prevented completion of the sale.
Defendants’ explanation for not advancing the sum of $3,100 in accordance with the terms of the binder is simple and logical: they would not pay such a sum without a formal contract of sale. On this crucial point, defendants testified that they signed the binder merely to accommodate plaintiff who was to use the same to demonstrate to the sellers that a prospective buyer had been found at the price reflected therein. The sellers were not present at the time defendants signed the binder,
The evidence clearly indicates that plaintiff, after getting both the sellers and purchasers to sign the binder, was treating this instrument as the contract of sale and was intent on holding defendants to a compliance therewith, without execution of any formal contract of sale. In so doing, plaintiff was, according to the terms of his own agreement, acting as the agent of the sellers.
*308 The binder further provided for the payment by the sellers of a 6% broker’s commission, due and payable upon the signing thereof. A provision which has the effect of requiring the payment of a broker’s fee by the seller upon the signing of a contract of sale, in circumstances where the broker has brought forward the purchaser and where consummation of the sale is frustrated by the fault of the purchaser, is considered unconscionable by the New Jersey courts (see Mayfair Fabrics v. Henley, 48 N. J. 483, 487).
We start with the proposition that where there is a contract of employment between the purchaser and the broker which does not expressly exclude the broker’s right to commission unless the purchaser actually enters into a contract of sale, the purchaser’s refusal to contract with a seller willing to contract on the purchaser’s terms makes the purchaser liable to the broker for the commission the broker would have received from the seller (Westhill Exports v. Pope, 12 N Y 2d 491; Duross Co. v. Evans, 22 A D 2d 573; Pease & Elliman v. Gladwin Realty Co., 216 App. Div. 421).
This liability is predicated upon the proposition that when the prospective purchaser knows that the broker will earn a commission from the seller, the law will imply a promise on the part of the prospective purchaser to complete the transaction, and if he fails or refuses to do so without a valid reason, thus preventing the broker from earning his commission from the seller, the prospective purchaser becomes liable to the broker for breach of an implied promise, with damages chargeable to him measured by the amount of commission the broker would have earned (Ellsworth Dobbs, Inc. v. Johnson, 50 N. J. 528, 559; Grossman v. Herman, 266 N. Y. 249).
On the basis of these stated principles, it would appear that the broker is entitled to judgment. Lest such conclusion be too hastily arrived at, however, a brief statement of some other principles, basic to the broker-principal relationship, is in order.
The burden of proving that defendants employed him as their broker is upon plaintiff (Naum v. Wiltsie, 271 App. Div. 169; Ditmars v. Renz, 269 N. Y. 191), who also bears the burden of proving that he performed the obligations undertaken by him of procuring a customer who was ready, willing, and able to enter into the transaction proposed (Basch v. Salvation Army, 244 App. Div. 230, affd. 271 N. Y. 589; Slater v. Citizens’ Sav. Bank, 242 App. Div. 238; Bendell v. Fisher, 219 App. Div. 498, affd. 246 N. Y. 614; Hekemian & Co. v. Rivara, 121 N. J. L. 418, *309 affd. 122 N. J. L. 523) and that the failure to complete the transaction was due to the fault of defendants (O’Connor-Sullivan, Inc. v. Otto, 283 App. Div. 269, app. den. 283 App. Div. 762; Hagen v. Sahlen, 226 App. Div. 271).
Of course, where the broker proves that his employer accepted the customer procured, as by entering into a contract with him, or by agreeing to make a contract, the broker need not prove the customer’s readiness, ability and willingness to perform (Schanerman v. Everett & Carbin, 10 N. J. 215; Calabrese v. Adelman, 7 N. J. Misc. 406; Homnick v. New York Dock Trade Facilities Corp., 246 App. Div. 844).
On the basis of the record made here, plaintiff has proven that he acted as defendants’ broker and that at their request he obtained for them the type of property sought for purchase. However, the sellers did not testify and plaintiff, of necessity, had to employ the binder to make his case on the vital issue of the seller’s readiness and willingness to perform at the prospective purchasers’ terms and to prove the latter’s default. The legal import of the binder by virtue of the agency provision therein is a merger of the identity of plaintiff and the sellers.
Once the binder was signed, it is clear that plaintiff, whether animated by his own interests or the sellers ’, but in any event acting as the sellers’ spokesman, legally, was insisting on a condition to the transaction which defendants were never prepared to meet.
While there is no doubt that defendants were interested in the property in question at the price offered, it is clear they were not prepared, without benefit of a formal contract of sale, to proceed on the basis of at least one of the terms set forth in that binder, i.e., to advance $3,100. This fact is amply demonstrated hy defendants ’ testimony and as well by the correspondence between plaintiff and defendants’ attorney which followed the signing of the binder.
This reluctance to proceed without a contract of sale was no blind adherence to mere formality. Whatever may be said for or against the practice of a broker preparing a binder complete enough in setting forth the details of a proposed sale that it may be enforceable as a contract, a prospective buyer ought not to be deprived of an opportunity to have a contract which includes clauses necessary to his protection.
Defendants were denied that opportunity by plaintiff’s insistence, as the agent of the sellers, that they proceed in the transaction along one of two paths: accept the binder as the contract of sale or, alternatively, pay $3,100 as a condition to *310 getting a contract of sale from the sellers. In effect then, the sellers imposed a term to the agreement which was never accepted or intended to be accepted by defendants.
In testifying as they did, without objection, that they were told at the time of the signing of the binder that a contract of sale would be entered into with the payment of the $3,100, defendants do not violate the parol evidence rule. Where a writing covers only part of an oral contract, the unwritten part may be shown by parol so long as it is not inconsistent with and contradictory of the writing (Cooper v. Payne, 186 N. Y. 334; Di Menna v. Cooper & Evans Co., 220 N. Y. 391, 397; Thomas v. Scutt, 127 N. Y. 133, 138). This is precisely the case here.
Plaintiff has not proved that he procured a seller ready, willing and able to sell on defendants’ terms. Accordingly, he is not entitled to the commissions sought. The complaint is dismissed.